IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HENRY S. KERNIUS, *et al.*, *

Plaintiffs, *

v. * Civil Action No.: RDB 05-1927

INTERNATIONAL ELECTRONICS, INC., *et al.*, *

Defendants. *

* * * * * * * * * * * * *

MEMORANDUM OPINION

This patent infringement action arises out of a complaint filed by inventors Henry S. Kernius and Ray J. Frise ("Plaintiffs") against International Electronics, Inc. ("IEI"), Wal-Mart Stores, Inc. ("Wal-Mart"), Target Corporation ("Target"), Radio Shack Corporation ("RadioShack"), Best Buy Company, Inc. ("Best Buy"), and numerous other defendants (collectively, "Defendants"). The complaint alleges that, *inter alia*, products manufactured by IEI and purchased and resold by Wal-Mart, Target, RadioShack, and Best Buy infringe the claims of U.S. Patent No. 6,628,771 (the "'771 Patent"). That patent describes a telecommunications device for managing an already engaged telephone line. Specifically, the '771 Patent claims an apparatus and method "for alerting and signal management of Call Waiting (CW) and/or Distinctive Call Waiting (DCW) located and used in conjunction with a plurality of Customer Premises Equipment (CPE)." '771 Patent, Col. 1, ll. 8-11.

Pending before this Court is IEI's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. IEI contends that Plaintiffs have failed to allege sufficient facts to establish that IEI purposefully directed its activities at residents of the State of Maryland. As

a result, IEI concludes that Plaintiffs have failed to satisfy their burden under the "stream of commerce" theory of personal jurisdiction. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, IEI's Motion to Dismiss is DENIED.

## STANDARD OF REVIEW

Personal jurisdiction in patent infringement cases is governed by the law of the United States Court of Appeals for the Federal Circuit rather than that of the regional circuit in which the action arose. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). To establish personal jurisdiction in a patent action over a non-resident defendant, a plaintiff must show that the forum state's long-arm statute applies, and that the requirements of due process are satisfied. *Commissariat A L'Energie v. Chi Mei Optoelect.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). Maryland's long-arm statute permits jurisdiction to the constitutional limits imposed by the due process clause. *See, e.g., Geelhoed v. Jensen*, 352 A.2d 818, 821 (Md. 1976). As a result, this Court has personal jurisdiction over IEI if such jurisdiction would not violate due process. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).

In the personal jurisdiction context, due process requires that the non-resident defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts are satisfied under one of two theories: general jurisdiction or specific jurisdiction. General jurisdiction arises where the defendant maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). In contrast, specific jurisdiction arises where the defendant

purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1985). In this case, only specific jurisdiction is at issue.

The Federal Circuit has established a three-prong test for determining whether the exercise of specific jurisdiction is consistent with due process: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995). When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need prove only a *prima facie* case of personal jurisdiction. In deciding whether the plaintiff has made such a showing, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citations omitted); *accord Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Once the plaintiff has satisfied its initial burden, however, the defendant must prove that the exercise of jurisdiction is unreasonable. *See Coyle*, 340 F.3d at 1350 (citations omitted).

## DISCUSSION

Defendant IEI is a corporation organized and existing under the laws of the State of Washington and has its principle place of business in Vancouver, WA. (Nassimi Decl. ¶ 1.) IEI manufactures internet call waiting products known as "Catch-A-Call" devices at its Vancouver facilities. (*Id*. at ¶ 2.) IEI contends that it does not sell its Catch-A-Call products directly to residents of the State of Maryland. (*Id*. at ¶ 6.) Instead, IEI only sells Catch-A-Call devices to "independent companies" that it "does not create, control, or employ" such as Target and Best

Buy. (*Id*. at ¶¶ 4 & 7.) These companies, according to IEI, "may (or may not)" sell Catch-A-Call devices in Maryland. (*Id*.) IEI does not maintain any agents, accounts, employees, or offices in the Maryland, does not target marketing or advertisements to Maryland, does not provide "regular advice" to customers in Maryland, and has not marketed its products "through a distributor who has agreed to serve as a sales agent in Maryland." (*Id*. at ¶¶ 4-7.)

Plaintiffs' Complaint alleges a similar set of facts. Specifically, Plaintiffs contend that:

> Defendant International Electronics, Inc. (IEI) is, upon information and belief, a corporation organized under the laws of the State of Washington, having a place of business at 5913 C N.E. 127th Avenue, Suite 800, Vancouver, Washington 98682. IEI is engaged in making, using, offering for sale and selling products covered under the claims of the '771 patent in suit and conducts substantial business in Maryland has [sic] sold infringing product in the State of Maryland, in this Judicial District.

(Compl. ¶ 4.) Plaintiffs allege that IEI's Catch-A-Call devices are purchased and resold by Wal-Mart, Target, RadioShack, and Best Buy.[1] (*Id*. at ¶ 22.) Plaintiffs also point out that IEI's website states that its products "are available in thousands of quality and trusted stores and catalogs across the USA and other countries, including: RadioShack, Best Buy, Target, Wal-Mart, K-Mart, Frys, ACE, Sam's Club and Costco." (Pls' Mem. Opp. p. 1.) Finally, Plaintiffs note that they purchased a Catch-A-Call device at a Wal-Mart store located in Mount Airy, Maryland before commencing this litigation. (*See* Pls' Mem. Opp. Ex. B.)

The critical question raised by the parties is whether selling Catch-A-Call devices to national retailers such as Wal-Mart, Target, RadioShack, and Best Buy is sufficient to establish constitutionally sufficient minimal contacts between IEI and the State of Maryland. This question is resolved by applying the "stream of commerce" doctrine that the Supreme Court first

---

[1] Each of these retailers admits to selling IEI's Catch-A-Call devices. (*See* Wal-Mart Answer, ¶ 71; Target Answer, ¶ 71; RadioShack Answer ¶ 71; Best Buy Answer, ¶ 71.)

addressed in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In that case, the Court distinguished "isolated occurrence[s]" of sales of products in the forum State from sales that "arise[] from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product" in the forum State. *Id*. at 297. Where a seller makes the latter type of sales, "it is not unreasonable for a court to find that the seller has purposefully availed himself of the privilege of doing business in the forum state." *Id*. As a result, the Court held that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id*. at 297-98. The Court did not identify, however, a precise test for gauging the expectations of sellers who place goods into the stream of commerce.

In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), the Supreme Court split with respect to what constitutes sufficient minimum contacts under the stream of commerce theory. Justice O'Connor, writing for four members of the Court, found that due process requires "an action of the defendant purposefully directed toward the forum State." *Id*. at 112. Justice O'Connor explained that:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id*. Justice Brennan, writing for three members of the Court, found that evidence of such "additional conduct" is not needed to find that the defendant has established minimum contacts

under the stream of commerce theory:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.

*Id*. at 117. Justice Brennan stated that the plaintiff must still show that the defendant purposefully availed himself of business in the forum State, but concluded that Justice O'Connor's approach "represents a marked retreat from the analysis" set forth in the *World-Wide Volkswagen* case. *Id*. at 118.

The Federal Circuit has repeatedly declined to resolve whether minimum contacts are established merely by placing a product in the stream of commerce with awareness of its potential destination (as Justice Brennan recommended) or require some showing of "additional conduct" with respect to the forum State (as Justice O'Connor proposed). *See Commissariat A L'Energie*, 395 F.3d at 1322 n.7 ("We have yet to decide whether Justice Brennan's standard is sufficient to satisfy due process, because we have yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor.") (citing *Beverley Hills Fan*, 21 F.3d at 1566; *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996)).[2]

---

[2] The United States Court of Appeals for the Fourth Circuit has adopted a standard that is aligned with Justice O'Connor's more stringent approach to the stream of commerce theory. *See, e.g.*, *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994) ("To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism."). In particular, the Fourth Circuit has held that the following standard should be applied in stream of commerce cases:

> whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum

In this case, IEI argues that Plaintiffs have failed to meet their burden under either the Justice O'Connor or Justice Brennan approach to the stream of commerce theory:

> For example, the plaintiffs did not plead that IEI has established distribution channels leading to Maryland, nor did they present any evidence that IEI has established distribution channels leading to the sales of accused product in Maryland. The plaintiffs also did not show that any of the factors relevant under Justice O'Connor's test for "stream of commerce" jurisdiction are present (nor did they even argue that the factors considered under Justice Brennan's test are present here).

(IEI's Reply Supp. Mot. Dism. p. 6.) After acknowledging Plaintiffs' contention that IEI uses established channels of trade to secure sales of Catch-A-Call devices throughout the United States, IEI argues that Plaintiffs not only failed "to establish that IEI has intentionally established channels of trade that lead to *Maryland*" but also failed to support their contention with "any allegations in the Complaint or any evidence submitted by the plaintiff in opposition to this motion." (*Id*. at 7 (emphasis in original).) Finally, IEI argues that "[t]his is indeed one of those rare circumstances where haling a non-resident defendant into the forum offends traditional notions of fair play and substantial justice." (*Id*. at 8.)

This Court finds that Plaintiffs have made a *prima facie* case of personal jurisdiction with respect to IEI. There is no dispute that IEI sells its Catch-A-Call devices "in thousands of

---

> contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Id*. at 945-46 (citations omitted). Although Federal Circuit rather than Fourth Circuit law is applied to patent actions such as this one, this Court notes that the instant case would satisfy the above test. *See* DISCUSSION, *infra* (finding that undisputed facts in this case justify the inference that Catch-A-Call devices are placed in the stream of commerce through established distribution channels and subsequently sold or used in the State of Maryland).

quality and trusted stores and catalogs across the USA and other countries, including: RadioShack, Best Buy, Target, [and] Wal-Mart. . . ." (Pls' Mem. Opp. p. 1 (quoting from IEI's website); *see also* RadioShack Answer, ¶ 71 ("ADMITS to offering and selling the Catch-A-Call devices. . . ."); Best Buy Answer, ¶ 71 (same); Target Answer, ¶ 71 (same); Wal-Mart Answer, ¶ 71 (same).) It is reasonable to infer from the undisputed fact that Catch-A-Call devices are sold by national retailers such as RadioShack, Best Buy, Target, and Wal-Mart that Catch-A-Call devices are placed in the stream of commerce through established distribution channels and subsequently sold or used in the State of Maryland. This inference is supported by Plaintiffs' purchase of a Catch-A-Call device from a Wal-Mart in Maryland. (*See* Pls' Mem. Opp. Ex. B.) Accordingly, this Court finds that Plaintiffs have made a *prima facie* showing that IEI purposefully directed its activities at Maryland residents by placing Catch-A-Call devices in the stream of commerce through established distribution channels.[3]

It is noteworthy that IEI does not argue that its products are *not* sold throughout this

[3] This Court rejects IEI's argument that "plaintiffs failed to point to any allegations in the Complaint or any available evidence to support their bare assertions in their Memorandum of Law in Opposition to this motion that IEI purposefully established distribution channels that lead to Maryland and should expect to be haled into court here." (IEI's Reply Supp. Mot. Dism. p. 6.) First, Plaintiffs allege in their Complaint that IEI's products are sold by Wal-Mart, Target, RadioShack, and Best Buy. (Compl. ¶ 4.) Second, Plaintiffs argue that selling to such national retailers, IEI purposefully shipped its products through established distribution channels into Maryland. (*See* Pls' Mem. Opp. p. 5 ("[T]he sales of Catch-A-Call through several major national retailers is not a mere act which may or may not result in sales in Maryland. International Electronics purposefully established channels of trade which would secure sales throughout the United States.").) Third, Plaintiffs point out in their opposition papers that IEI's website states that its products "are available in thousands of quality and trusted stores and catalogs across the USA and other countries, including: RadioShack, Best Buy, Target, [and] Wal-Mart. . . ." (*Id*. at p. 1.) Fourth, Plaintiffs indicate that they purchased a Catch-A-Call device at a Wal-Mart store located in Mount Airy, Maryland before commencing this litigation. (*Id*. at Ex. B.) IEI neither contests nor objects to any of these allegations or evidence. Notably, IEI does not specifically respond to Plaintiffs' argument that, by selling to national retailers, IEI purposefully established channels of trade that would secure sales in Maryland.

country or in the State of Maryland. Instead, IEI stakes its argument for lack of personal jurisdiction on a very different claim.

> IEI is not *aware* whether any Catch-A-Call devices have in fact been sold to residents of Maryland, nor whether any Catch-A-Call devices have actually been offered for sale in Maryland by another company that may have a retail establishment there, particularly because IEI did not create, control, or employ the independent companies that may (or may not) sell Catch-A-Call devices in Maryland.

(IEI's Mem. Supp. Mot. Dism. p. 3 (emphasis added) (citing Nassimi Decl. ¶¶ 7-8).) IEI's lack-of-awareness argument, however, is simply unreasonable. A corporation cannot sell its products to national retailers such as RadioShack, Best Buy, Target, and Wal-Mart and then claim that it is surprised to be haled into court in a particular State because, to the best of the corporation's knowledge, it was not specifically aware that its products were actually sold or used in that State. *See, e.g.*, *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975) ("We look to the economic and commercial realities of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products."); *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 169 F. Supp. 2d 530, 534 (W.D. Va. 1999) ("This ostrich-like stance is untenable under the law. While it may well be true that YEC deliberately takes steps to keep itself in the dark about YEA's marketing strategies, it cannot do so to escape jurisdiction."); *see also Estes v. Midwest Products, Inc.*, 24 F. Supp. 2d 621, 630 (S.D.W. Va. 1998) ("The defendant's intent and purpose are completely revealed in its decision to sell through national retail chains . . . it is the direct purpose and intent of the defendant that its products be sold in Kmart and Wal-Mart stores in [the forum State].").

With respect to the other factors of the Federal Circuit's test for personal

jurisdiction—whether the claim arises out of the activities alleged and whether assertion of personal jurisdiction is reasonable and fair—this Court finds that Plaintiffs have made the relevant *prima facie* showings. The cause of action for patent infringement is alleged to arise out of IEI's sale of Catch-A-Call devices to national retailers. *See* Compl. ¶¶ 21-22. In addition, Maryland has significant interest in discouraging patent infringement within the state and also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiffs' cause of action. *See Beverly Hills Fan*, 21 F.2d at 1568. The burden on IEI, though not insubstantial, is not sufficiently compelling to outweigh Plaintiffs' and Maryland's interests, because "progress in communication and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294.

In sum, this Court is satisfied that, based on the allegations and evidence in Plaintiffs' Complaint and opposition papers, the exercise of personal jurisdiction over IEI comports with the requirements of federal due process.

CONCLUSION

For the reasons stated above, Defendants' Motion to DISMISS is DENIED. A separate Order follows.

Dated: June 6, 2006

/s/______________________
Richard D. Bennett
United States District Judge