IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HENRY S. KERNIUS, *et al.*,                     *

    Plaintiffs,                                 *

       v.                                      *       Civil Action No.: RDB 05-1927

INTERNATIONAL ELECTRONICS,                      *
INC., *et al.*,
                                                *

    Defendants.                                 *

*      *      *      *      *      *      *      *      *      *      *      *      *

**MEMORANDUM OPINION**

    Plaintiffs Henry S. Kernius and Ray J. Frise ("Plaintiffs") filed this patent infringement

action against Defendants International Electronics, Inc. ("IEI"), Radio Shack Corporation

("RadioShack"), Best Buy Company, Inc., Target Corporation, and Wal-Mart Stores, Inc.

(collectively, "Defendants"). The patent in suit is U.S. Patent No. 6,628,771 (the "'771 Patent").

The meanings of disputed claim elements were determined by this Court during the claim

construction phase of this litigation. *See* Mem. Op., 3/30/07. Discovery is complete, and a jury

trial is scheduled to begin on July 9, 2007.

    On June 22, 2007, this Court conducted a hearing with respect to two motions:

Defendants' Motion for Summary Judgment of Patent Invalidity and Non-Infringement (Paper

No. 135) and Plaintiffs' Motion for Summary Judgment of Infringement (Paper No. 136). After

reviewing the parties' submissions and hearing argument from counsel, this Court issued an oral

ruling at the hearing GRANTING Defendants' Motion for Summary Judgment with respect to

Non-Infringement, DENYING Defendants' Motion for Summary Judgment with respect to

1

Patent Invalidity, and DENYING Plaintiffs' Motion for Summary Judgment of Infringement.  *See*

Order, 6/25/07.  This Memorandum Opinion supplements the oral ruling issued by this Court

during the June 22, 2007 hearing and explains the basis for these rulings in further detail.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the [nonmoving party] on the evidence presented."  *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences

drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*,

Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397,

405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable

fact finder could rely.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "Once the movant has

established the absence of any genuine issue of material fact, the opposing party has an

obligation to present some type of evidence to the court demonstrating the existence of an issue

of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing

*Pine Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also

requires that "affidavits submitted by the party defending against a summary-judgment motion

contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that

there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of

evidence in support of the nonmoving party's case is not sufficient to preclude an order granting

summary judgment.  *Anderson*, 477 U.S. at 252.

## DISCUSSION

**I.    Infringement.**

**A.    Literal Infringement and the Doctrine of Equivalents.**

A patentee may show infringement either by showing that an accused product literally

infringes a claim in the patent or that the product infringes under the doctrine of equivalents.

Literal infringement requires that each and every claim limitation be set forth in the accused

product. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370,

1378 (Fed. Cir. 2004).  "Where a claim does not read on an accused device *exactly*, there can be

no literal infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989)

(emphasis added) (citation omitted).  "Infringement may be found under the doctrine of

equivalents if every limitation of the asserted claim, *or its 'equivalent,'* is found in the accused

subject matter, where an 'equivalent' differs from the claimed limitation only insubstantially."

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)

(emphasis added).  An accused device that "performs substantially the same function in

substantially the same way to obtain the same result" as the patented invention may infringe

under this doctrine. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

In this case, Plaintiffs chose to neither assert nor develop evidence to support a claim of

infringement under the doctrine of equivalents. Instead, Plaintiffs merely attempted to "reserve

the right" to argue equivalence *if* Defendants asserted "a defense of no literal infringement" or

the trier of fact determined that Plaintiffs failed to satisfy their burden on the matter of literal

infringement. This position is clearly reflected in the papers submitted by Plaintiffs:

> · "Because Plaintiff did not know precisely which if any elements IEI would
> assert as not literally infringed, Plaintiff has reserved the right to rebut the
> potential assertions of IEI and to present the alternative, judicially created,
> doctrine of equivalents as an alternative to literal infringement if
> challenged." (Paper No 139 at p. 35.)

> · "IEI asserts that it is too late to assert doctrine of equivalence, however the
> claims were only recently construed and IEI has not asked for any
> admissions regarding doctrine of equivalence since the claim construction
> decision." (*Id*. at p. 33.)

Plaintiffs also suggest that an equivalence analysis should be addressed at trial *after* the jury finds

that the accused device does not literally infringe the asserted claims of the patent in suit:

> · "Plaintiff should be allowed to argue infringement under the doctrine of
> equivalents at trial as an alternative to literal infringement if the jury does
> not find literal infringement." (Paper No. 139 at p. 32)

> · "The doctrine of equivalents . . . is often not ripe prior to close of trial
> because it does not arise until the jury, or trier of fact, has made a
> determination of a lack of literal infringement." (*Id*. at p. 32.)

After considering the matter, this Court rejects Plaintiffs' position that arguing

infringement under the doctrine of equivalents is appropriate as an "alternative" or "fallback"

position to be pursued only if Defendants challenge literal infringement or the trier of fact

determines that there is no literal infringement. For reasons explained below, this position is

4

inconsistent with the notice and discovery requirements of this Court's Scheduling Order and

simply does not comport with the burden of proving infringement, which is borne by Plaintiffs.

Accordingly, this Court finds that Plaintiffs' infringement analysis is limited to the claim that the

accused device literally infringes the asserted claims of the '771 Patent and that Plaintiffs are

precluded from asserting infringement under the doctrine of equivalents.

First, this Court's Scheduling Order required Plaintiffs to identify whether they asserting

literal infringement, infringement under the doctrine of equivalents, or both:

> By September 20, 2006, Patent Owner shall file and serve a Claim Chart and
> Proposed Claim Construction Statement.
>
>> a.   The Claim Chart shall contain the following information:
>>
>>> (1)   Each claim of any patent in suit which the party alleges was
>>> infringed;
>>> (2)   The identity of each apparatus, product, device,
>>> process, method, art or other instrumentality of each
>>> opposing party which allegedly infringes each
>>> claim;
>>> (3)   *Whether such infringement is claimed to be literal
>>> or under the doctrine of equivalents*;
>>> (4)   Where each element of each infringed claim is found within
>>> each apparatus, product, device, process, method, act or
>>> other instrumentality . . .

(Paper No. 74 at p. 5 (emphasis added).)  The above provision of the Scheduling Order required

Plaintiffs to make clear the nature of their infringement case, *i.e.*, literal or equivalence or both,

so that the parties could conduct discovery and develop their cases accordingly.  At best,

Plaintiffs have done nothing more than assert a claim for literal infringement while attempting to

"reserve the right" to argue infringement under the doctrine of equivalence *after* the discovery

and summary judgment phases of this litigation.  This approach, however, does not satisfy the

Scheduling Order issued in this case.[1]  Accordingly, this Court rejects Plaintiffs' claims that it "could not determine if Defendant was asserting a defense of no literal infringement until the instant summary judgment motions were exchanged" and "[b]ecause Plaintiff did not know precisely which if any elements IEI would assert as not literally infringed, Plaintiff has reserved the right to rebut the potential assertions of IEI and to present the alternative, judicially created, doctrine of equivalents as an alternative to literal infringement if challenged."  (Paper No. 139 at p. 35); *cf. Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761 (Fed. Cir. 2002) (precluding plaintiff from asserting infringement under the doctrine of equivalents where plaintiff did not include that theory in claim chart).

Second, Plaintiffs cannot meet their burden of proving infringement under the doctrine of equivalents given that Plaintiffs failed to provide *discovery* on this very issue.[2]  The United

---

[1]     The Claim Chart filed by Plaintiffs on September 30, 2006 contains only one *specific* assertion of infringement under the doctrine of equivalents.  That assertion is limited to a single claim element, namely the "recognition circuitry" element of Claim 1(c) of the '771 Patent.  (*See* Paper No. 107 at p. 2 ("In the alternative, this element would be found equivalent because the differences are insubstantial.").)  The only other reference to equivalence in Plaintiffs' claim chart is the general statement that "[i]t is Plaintiffs' position that the words of the claims should be given there ordinary meaning *and afforded a full range of equivalence*."  (*Id.* at p. 28 (emphasis added).)  This phrase, however, is focused on claim construction, not infringement.  Indeed, it is the first sentence of Plaintiffs' section entitled "Proposed Claim Construction Statement."  (*Id.*)  Defendants could not reasonably conclude from the *claim construction* statement that "the words of the claims should be . . . afforded a full range of equivalence" that Plaintiffs intended to argue *infringement* under the doctrine of equivalents with respect to any single claim element.  This statement does not shed light on, for example, whether Plaintiffs would pursue an equivalence argument under the "insubstantial differences" or "function-way-result" tests.  It is also inconsistent with Plaintiffs' decision to assert infringement under the doctrine of equivalents with respect to the "recognition circuitry" claim element.

[2]     *See, e.g., Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) ("[I]t is axiomatic that the patentee bears the burden of proving infringement.").

States Court of Appeals for the Federal Circuit recently emphasized the conditions under which

evidence of infringement under the doctrine of equivalents is sufficient:

> As for infringement under the doctrine of equivalents, [the
> patentee] only presented the district court with conclusory
> statements about equivalents.  To avoid a grant of summary
> judgment of non-infringement by equivalents, *the patentee must
> present particularized evidence and linking argument as to the
> "insubstantiality of the differences" between the claimed invention
> and the accused device, or with respect to the "function, way,
> result" test*.  Thus, the patentee has the burden to present
> particularized evidence that links the accused products to the patent
> on a limitation by limitation basis.

*Motionless Keyboard Co. v. Microsoft Corp.*, ___ F.3d ___, 2007 WL 1531401, at *4 (Fed. Cir.

May 29, 2007) (emphasis added) (internal quotation marks and citations omitted); *see also Nike

Inc. v. Wolverine World Wide*, Inc., 43 F.3d 644 (Fed. Cir. 1994) (concluding that the district

court did not abuse its discretion in sanctioning Nike for failing to provide discovery on the issue

of infringement under the doctrine of equivalents).  In this case, Plaintiffs failed to develop

"particularized" evidence together with "linking argument" to the insubstantial-differences or

function-way-result tests on a limitation by limitation basis.[3]

In sum, Plaintiffs failed to assert a claim of infringement under the doctrine of equivalents

in accordance with this Court's Scheduling Order.  In addition, Plaintiffs did not provide

sufficient evidence during discovery to support a finding of infringement under the doctrine of

equivalents.  Accordingly, this Court finds that Plaintiffs are precluded from asserting

infringement under the doctrine of equivalents.

---

[3]     At the hearing, Defendants represented that Plaintiffs provided no expert
testimony or discovery on the matter of equivalence.  Plaintiffs did not challenge this position
during the hearing and the papers submitted by the parties do not suggest otherwise.

B.     **Apparatus Claims 1-3, 6, and 9-11.**

For reasons discussed above, Plaintiffs' infringement case is limited to a claim of *literal*

infringement. In other words, Plaintiffs' must establish that the accused product—in this case,

the "Catch-A-Call device"—literally infringes the asserted claims of the '771 Patent.  As noted

above, literal infringement requires that each and every claim limitation be set forth in the

accused product. *Frank's Casing Crew*, 389 F.3d at 1378; *see also IVAC Corp.*, 885 F.2d at

1580 ("Where a claim does not read on an accused device *exactly*, there can be no literal

infringement.") (citation omitted; emphasis added).

The asserted claims of the '771 Patent include apparatus Claims 1-3, 6, and 9-11.  A

number of claim elements range across these claims.  For example, the "call progress detector

circuitry" and "circuitry to recognize" elements are found in Claims 1-3, 6, and 9-11. *See* '771

Patent, Cols. 14-16.  The following language from Claim 1 is representative:

> 1.      An apparatus for altering a subscriber of a call waiting or a
> distinctive call waiting condition without the subscriber having to
> aurally monitor the subscriber's telephone receiver for call waiting
> SAS tones or distinctive call waiting SAS tones comprising;
>
> (a)     *call progress detector circuitry* for detecting either a call
> waiting SAS signal or a distinctive call waiting SAS signal;
>
> (b)     microcontroller set of instructions signals received from the
> call progress detector circuitry;
>
> (c)     *circuitry to recognize* a first signal with a duty cycle or
> cadence coupled with frequency and level indication of a
> call waiting SAS signal or a distinctive call waiting SAS
> signal; wherein the apparatus is configured to operate in
> either the presence or absence of a bandwidth
> encompassing modem signal;
>
> (d)     alert circuitry to alert the subscriber visually when the
> microcontroller set of instructions, stored in program

> memory, executing logic determines either a call waiting or
> a distinctive call waiting condition.

'771 Patent, Col. 14, ll. 13-32 (emphasis added).  During the claim construction phrase of this

case, this Court concluded that no construction of the "call progress detector circuitry" claim

language is necessary while the "circuitry to recognize" claim language was construed to mean

"circuitry specifically adapted for 'recognizing' the call waiting tone based on its duty cycle or

cadence, frequency, and level."  *See* Mem. Op., 3/30/07 at pp. 5-11.

Defendants argue that the accused device does not *literally* contain the claimed "call

progress detector circuitry" and "circuitry to recognize" elements because the accused device

uses a *single* element to detect and recognize call waiting signals while the '771 Patent claims

*two* discrete elements to accomplish these functions.  For the reasons set forth below, this Court

agrees.

First, there is no dispute that the claimed "call progress detector circuitry" and "circuitry

to recognize" are distinct elements.  This is apparent from consulting Claims 1-3, 6, and 9-11 of

the '771 Patent and was confirmed by Plaintiffs' expert during his deposition:

> Q.    Is the circuitry of element C the same circuitry as the call
>        progress detector circuitry of element A?
>
> A.    No.

(*See* Paper No. 135, Nocilly Aff., Ex. 11 ("Kernius Dep.") at p. 52, ¶ 245.)  Plaintiffs' expert also

explained the purpose behind having distinct circuitry for the "call progress detector circuitry"

and "circuitry to recognize" elements:

> Q.    [W]hy do you need circuitry to recognize a signal when the
>        call progress detector circuitry of element A has already
>        detected a call waiting signal or distinctive call waiting
>        SAS signal?

9

> A.    First of all, in the presence of a bandpass encompassing
>       modem, as Ray testified very eloquently, the quality of a
>       signal, as far as in the presence of bandpass encompassing
>       modem, looks like a 440, can look like a 440.  And we have
>       come up with a technique in our invention to be able to pull
>       that signal out and recognize it.  And that is the key thing
>       here.  It says: "Circuitry to recognize . . ."

(Kernius Dep. at p. 53, ¶ 250); *see also* '771 Patent, Fig. 4 (depicting the "call progress detector

circuitry" and "circuitry to recognize" as distinct and separate elements).

Second, there is no reasonable dispute that the accused Catch-A-Call device uses a *single*

element—an Atmel brand microprocessor running a software program developed by IEI—to

detect and recognize call waiting signals.  Indeed, the papers submitted by Plaintiff confirm that

their infringement analysis is that the claimed detection and recognition elements are satisfied by

the single microprocessor contained within the accused Catch-A-Call device.  (*See, e.g.*, Paper

No. 136 at p. 11 (comparing Fig. 4 of the '771 Patent with a figure from one of Defendants'

patents that illustrates the process of the accused device).[4])

Finally, it is well-established that there is no literal infringement where the patent in suit

claims two elements and the accused device has only one.  In *Unique Concepts, Inc. v. Brown*,

---

[4]    Plaintiffs attempt to argue that the accused device does *not* contain only one
element is inconsistent with positions taken by Plaintiffs in other contexts.  It is important to note
that Plaintiffs' argument focuses on a figure from one of Defendants' patents that illustrates a
three-step *process* that occurs within the Catch-A-Call microprocessor.  Essentially, Plaintiffs'
are arguing that a three-step *process* implies the existence of more than one *structural element*.
(*See, e.g.*, Paper No. 136 at p. 11; Paper No. 139, Declaration of Henry S. Kernius ("Kernius
Decl.") at ¶ 134-35 (noting that the figure "clearly demonstrates it is not a single element"
because it "demonstrates a 3 step process.").)  However, in a motion filed after the June 22, 2007
hearing, Plaintiffs argued that steps in a process run by a microprocessor do *not* recite structural
elements.  (*See* Paper No. 148 at p. 3 ("[I]n fact, claims 14, 17, and 18 do not recite any circuit
elements at all because they are method claims and only recite method steps just like the steps in
a program of a microprocessor.").)

939 F.2d 1558 (Fed. Cir. 1991), for example, the Federal Circuit explained that:

> The language of claim 1 makes unambiguous reference to two
> distinct elements of the claimed structure: linear border pieces and
> right angle corner pieces.  If, as Unique argues, linear border pieces
> of framing material, whose ends are mitered, are the same as linear
> border pieces and a right angle corner piece, the recitation of both
> types of pieces is redundant.  Unique's argument for merging the
> two types of claim elements into one also violates the oft-quoted
> "all elements rule," the essence of which is that to prove
> infringement, every element in the claim must be found in the
> accused device either literally or equivalently.  *See SmithKline
> Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 889
> (Fed. Cir.1988).  The district court thus correctly held that the plain
> language of the claim includes two distinct types of elements,
> including right angle corner border pieces, thereby precluding
> literal infringement.

*Id.* at 1561-62.  It is important to note that a finding of infringement based on the doctrine of

equivalents is not necessarily precluded where the patent in suit claims two elements and the

accused device has only one.  For example, the Federal Circuit has pointed out that:

> The claims at issue in this case require that the collet assembly
> comprise a front cap, a rear insert body, and a seal located between
> the front cap and rear insert body.  *The accused devices in this case
> do not have separate elements corresponding to the front cap and
> rear insert body limitations.  Accordingly, Eagle does not allege
> literal infringement.*  Eagle argues that a finding of infringement
> under the doctrine of equivalents would not vitiate a claim
> limitation because one-to-one correspondence of components is not
> required, and Arcom's one-piece collet assembly is otherwise
> equivalent to a collet assembly with a front cap and a rear insert
> body.  Arcom argues that the all-limitations rule requires that the
> accused device contain (1) an equivalent for the claimed front cap,
> (2) an equivalent for the claimed rear insert body, and (3) an
> equivalent for the claimed seal located between the front cap and
> the rear insert body.  The issue here is whether Arcom's one-piece
> collet assembly with a seal located along its periphery can be
> insubstantially different from a collet assembly comprised of a
> front cap, a rear insert body, and a seal located between the two,
> without violating the all-limitations rule.  Based on the record
> before us, we hold that the all-limitations rule does not prevent a

11

finding of infringement under the doctrine of equivalents.

*Eagle Comtronics, Inc. v. Arrow Comm'n Lab's*, 305 F.3d 1303, 1317 (Fed. Cir. 2002)

(emphasis added).  In this case, however, a claim of infringement under the doctrine of

equivalents is unavailable to Plaintiffs for reasons set forth above.[5]

This Court notes that there are two additional points that must be emphasized.  First,

although the analysis set forth above focuses upon the "call progress detector circuitry" and

"circuitry to recognize" elements of apparatus Claims 1-3, 6, and 9-11, Plaintiffs face the same

tension (between no basis for a finding of literal infringement and failure to develop a case of

infringement under the doctrine of equivalents) with respect to other elements set forth in

apparatus Claims 1-3, 6, and 9-11.[6]  Those elements were discussed in detail during the June 22,

2007 hearing.  Second, although Plaintiffs' infringement analysis is couched in terms of literal

infringement, Plaintiffs frequently engage in what is essentially a means-plus-function

_____

[5]      To pursue a claim of infringement under the doctrine of equivalents with respect
to the "call progress detector circuitry" and "circuitry to recognize" elements, Plaintiffs would
have been required to assert a claim of infringement under the doctrine of equivalents with
respect to both elements in their claim chart and provide "particularized" evidence together with
"linking argument" to the insubstantial-differences or function-way-result tests with respect to
both elements.  However, Plaintiffs satisfied neither of these requirements.  Instead, as noted
above, Plaintiffs merely asserted infringement under the doctrine of equivalents with respect to
the "circuitry to recognize" element.

[6]      *E.g.*: (1) the "microcontroller set of instructions signals received from the call
progress detector circuitry," which was construed to mean "the call progress detector circuitry
outputs a signal corresponding to the call waiting signal to recognition circuitry," *see* Mem. Op.,
3/30/07 at p. 11; (2) the "call progress detector circuitry for detecting either a call waiting SAS
signal or a distinctive call waiting SAS signal," which, as noted above, was not construed by this
Court during the claim construction phase of this litigation, *see id.* at pp. 5-11; and (3) the
"circuitry to recognize a first signal with a duty cycle or cadence coupled with frequency and
level indication of a call waiting SAS signal or a distinctive call waiting SAS signal," which was
construed to mean "circuitry specifically adapted for 'recognizing' the call waiting tone based on
its duty cycle or cadence, frequency, and level," *see id.* at p. 11.

12

infringement analysis.  For example, at the hearing Plaintiffs took the position that the "call

progress detector circuitry" and "circuitry to recognize" elements were satisfied by the

microprocessor running software to perform the *detection function* and the same microprocessor

running software to perform the *recognition function*.[7]  However, this Court noted in its claim

construction opinion that "[t]here is no suggestion . . . that the relevant claim language is

governed by 35 U.S.C. § 112, ¶ 6."  Mem. Op., 3/30/07 at p. 10.  At the hearing moreover, this

---

[7]      Like many of Plaintiffs' other arguments, this position appears to be making a
point regarding the *interchangeability* of different types of structures.  Interchangeability,
however, is typically addressed under the doctrine of equivalents.  As the Federal Circuit
explained in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1310 (Fed.
Cir. 1998):

> Chiuminatta also argues that the wheels are equivalent to the skid
> plate because they are interchangeable; the alleged infringer's saw
> may be outfitted with a skid plate and the patentee's saw may be
> outfitted with the accused wheels.  This argument is not
> persuasive.  Almost by definition, two structures that perform the
> same function may be substituted for one another.  The question
> of known interchangeability is not whether both structures serve
> the same function, but whether it was known that one structure
> was an equivalent of another.  Moreover, a finding of known
> interchangeability, while an important factor in determining
> equivalence, is certainly not dispositive.  *See, e.g., Graver Tank &*
> *Mfg. Co v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)
> (stating in reference to the doctrine of equivalents that
> consideration "must be given to the purpose for which an
> ingredient is used in a patent, the qualities it has when combined
> with the other ingredients, and the function which it is intended to
> perform.  An important factor is whether persons reasonably
> skilled in the art would have known of the interchangeability of an
> ingredient not contained in the patent with one that was.").

*Id.* at 139-1310; *c.f. Pennwalt Corp. v. Durand Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir.
1987) (en banc) ("If ... the accused devices differ only in substituting a computer for hard wired
circuitry, [the patentee] might have a stronger position for arguing that the accused devices
infringe the claims." ).

13

Court asked Plaintiffs whether the claim terms in the '771 Patent should be construed as means-plus-function elements and Plaintiffs again confirmed that there is no basis for treating these elements as governed by § 112, ¶ 6.

In sum, the accused device does not literally infringe the asserted apparatus claims of the '771 Patent because, *inter alia*, the claimed invention contains two distinct "call progress detector circuitry" and "circuitry to recognize" elements while the Catch-A-Call device contains a single microprocessor.  Plaintiffs are precluding from asserting infringement under the doctrine of equivalents, moreover, because of their failure to comply with the notice requirements of this Court's Scheduling Order and their failure to provide "particularized" evidence together with "linking argument" to the insubstantial-differences or function-way-result tests.  Accordingly, Defendants' Motion for Summary Judgment with respect to Non-Infringement of apparatus Claims 1-3, 6, and 9-11 was GRANTED and Plaintiff's Motion for Summary Judgment of Infringement was DENIED.

### C.   Method Claims 14, 17, and 18.

After the hearing of June 22, 2007 and this Court's ruling on the record granting the Defendants' Motion for Summary Judgment, Plaintiffs filed a Motion for Clarification Prior to Trial (Paper No. 148).  Plaintiffs essentially seek reconsideration of this Court's ruling with respect to the asserted method claims of the '771 Patent.

The asserted claims of the '771 Patent also include method Claims 14, 17, and 18. Claims 14 and 17 contain representative claim language:

> 14.     A method to alert a subscriber of a call waiting or a distinctive call waiting condition without the subscriber having to aurally monitor the subscriber's telephone receiver for call waiting SAS tones or distinctive call waiting SAS tones comprising the

steps of;

(a)    detecting either a call waiting SAS signal or a distinctive call waiting SAS signal; wherein said detecting is carried out on a first signal of a call waiting SAS signal or a distinctive call waiting SAS signal by detecting duty cycle or cadence coupled with frequency and level indication of a call waiting SAS signal or a distinctive call waiting SAS signal;

(b)    if SAS detected, *altering the subscriber for a set period visually or until an acknowledge button is depressed before the set period expires*;

(c)    if SAS is not detected continue to monitor for that condition.

17.    A method for automatically managing a call waiting and distinctive call waiting condition comprising the steps of;

(a)    detecting either a call waiting SAS signal or a distinctive call waiting SAS signal; *wherein said detecting is carried out* on a first signal of a call waiting SAS signal or a distinctive call waiting SAS signal *by detecting duty cycle or cadence coupled with frequency and level indication of a call waiting SAS signal or a distinctive call waiting SAS signal*;

(b)    *if SAS detected, determine whether the subscriber line is in an off-hook condition*;

(c)    if SAS is not detected continue to monitor for that condition;

(d)    if the subscriber line is off hook, muting and disconnecting the telephonic device connected to the data port and transferring from the data port to the voice/Fax port;

(e)    monitoring if the telephonic device connected to the voice/Fax port goes from an off-hook to an on-hook condition;

(f)    if the device is in an on-hook condition, un-mute

15

and transfer of the data port;

(g)    if the device is in an on-hook condition, continue
        monitoring until the device is in an off hook
        condition.

'771 Patent, Cols. 16-17 (emphases added).  During the claim construction phrase of this case,

this Court construed the claim language "circuitry to recognize a first signal with a duty cycle or

cadence coupled with frequency and level indication of a call waiting SAS signal or a distinctive

call waiting SAS signal" to mean "circuitry specifically adapted for 'recognizing' the call waiting

tone based on its duty cycle or cadence, frequency, and level." *See* Mem. Op., 3/30/07 at p. 11.[8]

This Court also construed the claim language "altering the subscriber for a set period visually or

until an acknowledge button is depressed before the set period expires" to mean "alerting for a

specific period of time unless interrupted by manual intervention."  *See* Mem. Op., 3/30/07 at

pp. 17-19.  The claim language "if SAS detected, determine whether the subscriber line is in an

off-hook condition" was not in dispute during the claim construction phase of this litigation.

        Defendants contend that the accused Catch-A-Call device cannot literally infringe method

claims 14 and 18 because it does not perform the step of "alerting for a specific period of time

unless interrupted by manual intervention."  Plaintiffs respond to this argument by contending

that "[t]he Catch-A-Call alerts for a specific period of time, 1.4 seconds, unless interrupted by

lifting the receiver (manual interruption)."  (Paper No. 139 at pp. 31-32.)  To support this

contention, Plaintiffs offer the following expert opinion:

        Consider the following scenario. If a call waiting comes in while

_____

[8]    Although the claim language that this Court construed is found in the asserted
apparatus claims of the '771 Patent, the parties do not dispute that this Court's construction
applies with equal force to the corresponding language from the asserted method claims.

surfing the Internet.  The Catch-A-Call alerts both visually and
audibly.  If the user ignores the call and does nothing (the user does
not provide manual intervention by picking up the phone therefore
no flash hook is issued by Catch-A-Call).  10 seconds later
(assuming the third party is still on the line) the Catch-A-Call will
alert a second time (10 seconds later).  He can again do nothing
(again no manual intervention) or answer the call (user does
provides manual intervention by picking up the phone therefore a
flash hook is issued by the Catch-A-Call).

Now consider next the following scenario.  If a call waiting comes
in while surfing the Internet.  The Catch-A-Call alerts both visually
and audibly.  If the user takes the call by providing manual
intervention by picking up the phone a flash hook is issued by
Catch-A-Call.  There are no further alerts since as per the standard
and using similar words but rephrasing it the DRCW customer has
take [sic] action to receive the waiting call by flashing or
disconnecting within 10 seconds, the distinctive call-waiting tone
would not be repeated.  This behaviour has been observed in the
Catch-A-Call and therefore confirms that it does have the subject
claim structure.

(Kernius Decl. at ¶¶ 128-130.)

   After considering the relevant evidence, this Court finds that argument and expert

opinions provided by Plaintiffs to support their conclusion that the accused device alerts for a

specific period of time (1.4 seconds) unless manually interrupted by picking up the phone do not

create any *genuine* disputes of material fact.  As Defendants pointed out in their reply papers, the

Catch-A-Call device lacks both an attached telephone and an interrupt button.  As result,

Plaintiffs fail to provide sufficient evidence to support a finding that the *accused device* (as

opposed to a system comprised of the accused device and an attached telephone) performs the

step of "alerting for a specific period of time unless interrupted by manual intervention."  In

addition, the evidence forwarded by Plaintiff does not create a genuine dispute with respect to the

proposition that picking up the phone does not interrupt the alert period of the Catch-A-Call

17

device.[9]  Specifically, Plaintiffs' expert Mr. Kernius does *not* opine that picking up the phone

interrupts the accused device's alert period of approximately 1.4 seconds.  Instead, Mr. Kernius

opines that "[t]here are no further alerts" *after* the phone is picked up.  (*See* Kernius Decl. at ¶¶

128-130.)  Accordingly, this Court finds that Plaintiffs have failed to forward sufficient evidence

to create a genuine dispute of material fact with respect to the literal infringement of method

Claims 14 and 18.  For reasons set forth above, there is no basis for an assertion of infringement

under the doctrine of equivalents with respect to these claims.[10]

Defendants also contend that the accused Catch-A-Call device cannot literally infringe

method claims 17 and 18 because it does not perform the step of "if SAS detected, determine

whether the subscriber line is in an off-hook condition."  Plaintiffs respond to this argument by

contending that "[t]he Catch-A-Call check [sic] the on-off- hook conditions of all its ports and

makes decisions about operation based upon those conditions."  (Paper No. 139 at p. 32.)  To

support this contention, Plaintiffs offer the following expert opinion:

> First consider the statement "because it is instead constantly
> checking all of the jacks to determine whether any attached device
> is off-hook".  It would then follow that after you did detect a call
> waiting and you are "constantly checking all of the jacks to
> determine whether any attached device is off-hook".  It then

---

[9]     (*See* Paper No. 135, Declaration of James Crider ("Crider Decl.") at ¶ 11 ("The
Catch-A-Call device does not include any structure, such as a button or switch, which allows for
manual interruption of the signaling process, nor can the signaling process be interrupted by any
external equipment that may be connected to the Catch-A-Call device.").)

[10]     The doctrine of equivalents applies to both apparatus and method claims.  *See*,
*e.g.*, *Aquatex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) ("A
finding of infringement under the doctrine of equivalents requires a showing that the difference
between the claimed invention and the accused product or *method* was insubstantial or that the
accused product or *method* performs the substantially same function in substantially the same
way with substantially the same result as each claim limitation of the patented product or
method.") (emphasis added).

logically follows that after you detect a call waiting you would of course be checking for it next because you do it "constantly". I do not see how this can be argued any further, since even computer firmware (the programmer's instructions) does everything sequentially. This also applies to interrupt routines which stops a process if the interrupt level is high enough and sequentially processes the interrupt routine and then returns to the process it was doing before it was interrupted. Therefore in a microcomputer the majority of the operations cannot be at the exact same time.

Now let us consider "In fact, in order for the call waiting signal to be received by the Catch-A-Call device, the subscriber line must already be off-hook" and "because it is instead constantly checking all of the jacks to determine whether any attached device is offhook" and the control relay in the Catch-A-Call connects the modem to the subscriber line. It logically follows that since you check the modem you are checking the subscriber line since it is connected by the control relay. In conclusion this appears to be an exercise in semantics rather than a technical argument.

(Kernius Decl. at ¶¶ 132-133 (footnote omitted).)

After considering the relevant evidence, this Court finds that argument and expert opinions provided by Plaintiffs to support their conclusion that the accused device performs the step of "if SAS detected, determine whether the subscriber line is in an off-hook condition" do not create any genuine disputes of material fact. In essence, Plaintiffs argue that because the Catch-A-Call device *constantly* checks to determine whether an attached device is off-hook, it necessarily follows that the Catch-A-Call device makes this determination *if* SAS is detected. (*See* Kernius Decl. at ¶ 132.) In other words, Plaintiffs view the "if-then" construct of this claim limitation as *not* requiring that the antecedent (if SAS is detected) bear a causal or responsive relation to the consequent (determine whether an attached device is off-hook).

To properly evaluate Plaintiffs' argument, it is important to consider the relevant claim language in context:

19

     17.    A method for automatically managing a call waiting and distinctive call waiting condition comprising the steps of;

    (a)    detecting either a call waiting SAS signal or a distinctive call waiting SAS signal; wherein said detecting is carried out on a first signal of a call waiting SAS signal or a distinctive call waiting SAS signal by detecting duty cycle or cadence coupled with frequency and level indication of a call waiting SAS signal or a distinctive call waiting SAS signal;

    (b)    *if SAS detected, determine whether the subscriber line is in an off-hook condition*;

    (c)    *if SAS is not detected continue to monitor for that condition . . .*

'771 Patent, Col. 16, ll. 49-63 (emphasis added).  The problem with Plaintiffs' infringement analysis is that steps (b) and (c) of Claim 17 identify a "fork" in the pathway.  If an SAS signal is detected, then step (b) requires going down one "fork" to determine whether the attached device is off-hook.  If an SAS signal is *not* detected, then step (c) requires going down a different "fork" to continue to monitor for an SAS condition.  The accused Catch-A-Call device, however, does not perform the identical steps.  Instead, it monitors for an off-hook condition in every cycle.[11] Accordingly, this Court finds that Plaintiffs fail to forward sufficient evidence to create a genuine dispute of material fact with respect to the literal infringement of method Claims 14 and 18.  For reasons set forth above, moreover, there is no basis for an assertion of infringement under the doctrine of equivalents with respect to these claims.

    Finally, Defendants contend that the accused Catch-A-Call device cannot literally infringe

---

[11]    (*See* Crider Decl. at ¶ 4 ("The external jacks provided with the Catch-A-Call device are checked to determine whether they are off-hook (*i.e.*, whether an attached telephone device is off its hook and thus in use), every time the microcontroller cycles through the software, regardless of whether a call waiting signal has been detected.").)

method claims 14 and 17 because it does not perform the step of "'recognizing' the call waiting

tone based on its duty cycle or cadence, frequency, and level." Plaintiffs respond by arguing that:

> [R]ecognition of a call waiting signal, based upon the listed
> parameters *does not mean that specific values for the parameters
> are measured, it only means that a distinction between a valid call
> waiting and an invalid call waiting can be made*. It is not
> necessary to hear every note of a song or even a significant portion
> of a song in order to recognize the song. It is only necessary to
> sample the call waiting signal in order to recognize it as distinct
> from other signals based upon its parameters of duty cycle,
> cadence, level, frequency.

(Paper No. 139 at p. 31 (emphasis added).) This Court finds that Plaintiffs fail to forward

sufficient evidence to create a genuine issue of material fact with respect to the literal

infringement of this claim limitation. It is undisputed that the duty cycle or cadence of a call

waiting signal is determined by the relationship between the "on" and "off" times of a signal. It

is also undisputed that the software of the accused Catch-A-Call device does not attempt to

measure the "off" time of a call waiting signal. The claim limitation at issue requires the step of

recognizing a call waiting tone based on, *inter alia*, duty cycle or cadence. An accused device

that performs the step of distinguishing a valid call waiting tone from an invalid call waiting tone

does not literally satisfy this limitation. Accordingly, this Court finds that Plaintiffs fail to

forward sufficient evidence to create a genuine dispute of material fact with respect to the literal

infringement of method Claims 14 and 17. For reasons set forth above, moreover, there is no

basis for an assertion of infringement under the doctrine of equivalents with respect to these

claims.

In sum, the accused device does not literally infringe the asserted method claims of the

'771 Patent. Plaintiffs are precluding from asserting infringement of these claims under the

doctrine of equivalents, moreover, because of their failure to comply with the notice

requirements of this Court's Scheduling Order and their failure to provide "particularized"

evidence together with "linking argument" to the insubstantial-differences or function-way-result

tests.  Accordingly, Defendants' Motion for Summary Judgment with respect to Non-

Infringement of method Claims 14, 17, and 18 was GRANTED.  For the same reasons, Plaintiffs'

Motion for Clarification Prior to Trial (Paper No. 148) is DENIED.

## II.    Invalidity.

Defendants argue in their summary judgment papers that some of the asserted claims of

the '771 Patent are (1) invalid under 35 U.S.C. 102(b)[12] on grounds that the invention claimed in

the '771 Patent is anticipated by prior art, and (2) invalid under 35 U.S.C. § 103(a)[13] on grounds

that the invention claimed in the '771 Patent is obvious in light of the prior art.  For reasons

stated on the record during the June 22, 2007 hearing, this Court finds that there exist genuine

issues of material fact with respect to the invalidity issues raised in the parties' submissions and

discussed during the hearing.  Accordingly, Defendants' Motion for Summary Judgment of Patent

Invalidity was DENIED.

---

[12]     35 U.S.C. § 102(b) provides: "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. . ."

[13]     35 U.S.C. § 103(a) provides: "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  (emphasis added)

## CONCLUSION

For the reasons stated above and on the record during the June 22, 2007 hearing,

Defendants' Motion for Summary Judgment (Paper No. 135) was GRANTED with respect to

Non-Infringement and DENIED with respect to Invalidity, and Plaintiffs' Motion for Summary

Judgment of Infringement (Paper No. 136) was DENIED.  For the same reasons, Plaintiffs'

Motion for Clarification Prior to Trial (Paper No. 148) is DENIED.  A separate Order has already

been issued with respect to the motions addressed at the June 22, 2007 hearing.  *See* Order,

6/25/07.  A separate order will be issued with respect to Plaintiffs' Motion for Clarification Prior

to Trial.


Dated: July 5, 2007                        /s/ *Richard D. Bennett*
                                           Richard D. Bennett
                                           United States District Judge

23